UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LISA M. C., )<br>          **Plaintiff** )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of Social Security,** )<br>)<br>          **Defendant** ) | No. 2:20-cv-00080-NT |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing past relevant work as a landscape laborer and, in the alternative, other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ failed to consider a psychological evaluation that she knew would be submitted post-hearing and made mental and physical residual functional capacity (RFC) determinations unsupported by substantial evidence. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 5-19. I conclude that the ALJ improperly construed raw medical evidence in crafting the plaintiff's mental RFC and, on that basis, recommend that the court vacate the commissioner's decision and remand

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of degenerative disc disease of the thoracic and lumbar spine, post-traumatic stress disorder (PTSD), affective disorder, personality disorder, and mild neurocognitive disorder, Finding 2, Record at 19; that she had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) and could understand, remember, and carry out simple instructions, tolerate occasional interaction with supervisors, coworkers, and the public, and tolerate occasional changes in a routine work setting, but could not work at a production rate pace such as an assembly line and might be off task for five percent of the workday in addition to normal breaks, Finding 4, *id.* at 22; that she was capable of performing past relevant work as a landscape laborer, which did not require the performance of work-related activities precluded by her RFC, Finding 5, *id.* at 28; that, in the alternative, considering her age (42 years old, defined as a younger individual, on the date her SSI application was filed, November 27, 2017), education (limited and able to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id.* at 29-31; and that she, therefore, had not been disabled from November 27, 2017, the date her SSI application was filed, through the date of the decision, July 30, 2019, Finding 6, *id.* at 31. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks remand on the basis, *inter alia*, that the ALJ partly relied on two outdated expert opinions and otherwise construed raw medical evidence to assess her mental RFC, rendering that determination unsupported by substantial evidence. *See* Statement of Errors at 11-19; *see also, e.g.*, Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)

(Although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record."). I agree.

The record before the ALJ contained two expert mental RFC assessments, those of agency nonexamining consultant H. Ferrin, Ph.D., dated July 15, 2014, created in connection with a prior application by the plaintiff for benefits, *see* Record at 89-92, and treating counselor Mary Hickey, LCSW, dated May 10, 2018, *see id*. at 508-10, as well as a June 24, 2014, report of a psychiatric evaluation by agency examining consultant Richard F. Liotta, Ph.D., *see id*. at 364-67, and an April 12, 2018, report of a psychological evaluation by Leah Baer, Psy.D., *see id*. at 496-506. The plaintiff also submitted a July 5, 2019, report of a psychological evaluation by Beata A. Wiktor, Psy.D., that the commissioner concedes the ALJ erred in failing either to exhibit as part of the record or consider. *See* Attach. A ("Wiktor Report") (ECF No. 15) to Statement of Errors; Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 18) at 11-12. In April 2018 and September 2018, respectively, agency nonexamining consultants Mary Burkhart, Ph.D., and Leigh Haskell, Ph.D., found insufficient evidence to evaluate the claim and, hence, did not assess a mental RFC. *See* Record at 98-100, 117-19.

Dr. Ferrin, who had the benefit of review of the Liotta evaluation, *see id.* at 88, found that the plaintiff had severe mental impairments of affective disorders, anxiety disorders, and organic brain syndrome causing mild limitations in her activities of daily living and ability to maintain social functioning and moderate limitations in her ability to maintain concentration, persistence, or pace, *see id*. at 87. He concluded:

> [T]he [plaintiff] is able to understand and remember instructions, and sustain attention and concentration for tasks. [She] may benefit from a work environment where she is not required to have intensive interaction with the public, but appears capable of routine and superficial interactions with coworkers/supervisors. [She]

4

>exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions.

*Id.* at 91.

LCSW Hickey indicated that the plaintiff had a number of marked limitations in her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself and that she rarely could interact appropriately with the public, coworkers, or supervisors. *See id.* at 508-09.

Dr. Liotta diagnosed the plaintiff with an unspecified neurocognitive disorder "with some memory deficits and some other symptoms such as being prone to fainting" and a rule-out of unspecified personality disorder. *See id.* at 367. He concluded that the plaintiff "appears to have had a somewhat chaotic life[,]" "may have some difficulty secondary to some personality issues[,]" "is not reporting a great deal of psychiatric symptoms per se other than the neurocognitive symptoms[,]" and her "[o]verall psychiatric prognosis appears to be fair." *Id.*

Dr. Baer diagnosed the plaintiff with PTSD, persistent depressive disorder, currently mild, avoidant and dependent personality traits, and mild neurocognitive disorder. *See id.* at 503. She concluded, *inter alia*, that the plaintiff had a "limited ability to learn and to problem solve as a result of difficulty processing information quickly and efficiently so as to allow cognitive resources to be devoted to acquiring more advanced skills" and that "[h]er performance on memory testing and executive functioning measures" also suggested "weak verbal and visual memory and difficulty with multi-step planning." *Id.* at 502.

Dr. Wiktor diagnosed the plaintiff with major depression disorder, severe recurring, and schizoid personality disorder, *see* Wiktor Report at 11, concluding that she was "experiencing adaptive, interpersonal and functional difficulties[,]" *id.* at 10. She described "[t]he patterns of antisocial tendencies, prosecutor ideations and possible delusional thinking" as "features of

5

schizoid personality disorder." *Id*. She noted that, vocationally, the plaintiff "struggle[d] with a focus and direction in her life" and, although she could "identify concrete goals," was "likely to have significant difficulties reaching them on her own[,]" as a result of which case management services "likely would be beneficial[,]" *id*.

The ALJ deemed the Burkhart and Haskell findings "unpersuasive[,]" describing the failure to find a severe mental impairment as "inconsistent with subsequent evidence[.]" Record at 28. She deemed the Ferrin assessment "partially persuasive" but described it as "remote, predating the current adjudicative period, and of limited utility in determining the [plaintiff]'s current [RFC]." *Id*. Nonetheless, she noted that the Ferrin assessment appeared "more consistent with the current record" than the findings of Drs. Burkhart and Haskell and "consistent in part with Dr. Baer's findings." *Id.* She found the Hickey opinion "unpersuasive[,]" describing it as not well-supported and inconsistent with the record evidence as a whole, including Dr. Baer's conclusions and LCSW Hickey's own treatment notes. *Id*. at 27-28.

The ALJ found the Baer evaluation "partially persuasive[,]" explaining:

> Dr. Baer's conclusion that the [plaintiff] had weak verbal and visual memory, difficulty with multi-step planning, and her recommendation that the [plaintiff] break down large tasks into smaller components are also partially accounted for in the [plaintiff]'s RFC.

*Id.* at 27.

Finally, the ALJ deemed the Liotta evaluation "partially persuasive[,]" noting that it was "remote[,] predating the current adjudicative period" and was "therefore of limited utility" in determining the plaintiff's current RFC, was "vague[,]" and did not "articulate specific limitations in vocational terms." *Id*. at 28. She did not explain in what respects, if any, she partly credited the Liotta evaluation. *See id*.

The ALJ's mental RFC differed in several respects from that of Dr. Ferrin, the only expert who provided a mental RFC assessment that she credited in part.  Whereas Dr. Ferrin deemed the plaintiff "able to understand and remember instructions, and sustain attention and concentration for tasks[,]" *id*. at 91, the ALJ found that she could "understand, remember, and carry out simple instructions" and was "unable to work at a production rate pace" and might "be off task for 5 percent of the workday" in addition to normal breaks, Finding 4, *id*. at 22.

The plaintiff contends that the ALJ erred in relying in part on the outdated reports of Drs. Ferrin and Liotta and otherwise exceeding the bounds of her competence as a layperson in translating the raw results of Dr. Baer's evaluation into functional limitations.  *See* Statement of Errors at 13-17.  She adds that, even if the ALJ's reliance on Dr. Ferrin was not misplaced, the ALJ's assessment of additional limitations to simple work, a prohibition against production pace work, and a five percent allowance for off-task behavior were not commonsense determinations, and it is not self-evident that they adequately address her mental limitations.  *See id*. at 16-17 (citing *Sean M. v. Saul*, No. 1:18-cv-00315-JHR, 2019 WL 4145223, at *2 (D. Me. Aug. 30, 2019); *Norman T. v. Berryhill*, No. 1:17-cv-00323-GZS, 2018 WL 3105778, at *4-6 (D. Me. June 24, 2018) (rec. dec., *aff'd* Aug. 6, 2018); *Caudle v. Colvin*, No. 1:15-cv-201-JHR, 2016 WL 1734074, at *5 (D. Me. Apr. 29, 2016)).

The commissioner rejoins that remand, nonetheless, is unwarranted because (i) the plaintiff fails to show that evidence unseen by Dr. Ferrin called his assessment into question, and (ii) the ALJ otherwise gave the plaintiff the benefit of the doubt by adopting a mental RFC "'more favorable to the [plaintiff] than those set forth in expert opinions on which the ALJ otherwise could have relied[.]'"  Opposition at 5-8 (quoting *Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018); (citing *Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017

WL 2731308, at *5 (D. Me. June 25, 2017) (rec. dec., *aff'd* Aug. 28, 2017); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015)).  He emphasizes that the ALJ explained that she adopted greater limitations than those found by Dr. Ferrin to account for the plaintiff's distractibility and limited ability to focus, crediting in part the plaintiff's subjective allegations that she had problems maintaining focus and attention and referencing Dr. Baer's recommendation that "'she would function best in structured environments that were as free from distractions as possible.'"  Opposition at 8 (quoting Record at 24).

The plaintiff has the better argument.  Even assuming *arguendo* that the ALJ did not err in relying in part on the Ferrin opinion, she did not either expressly or impliedly give the plaintiff the benefit of the doubt in adopting greater limitations than he assessed.  Rather, she deemed the Ferrin opinion outdated and insufficiently restrictive, construing raw medical evidence to fill the gap. *See* Record at 27-28; *Jamie A. V. v. Saul*, No. 1:19-cv-00386-JDL, 2020 WL 2838546, at *3 (D. Me. June 1, 2020) (rec. dec., *aff'd* July 23, 2020) (ALJ's mental RFC determination not more favorable to claimant than evidence would otherwise support when ALJ determined opinions of agency nonexamining consultants "were in some respects inadequately restrictive, deviating from them on the basis of his lay interpretation of evidence unseen by them"); *Sean M.*, 2019 WL 4145223, at *3 ("[A]bsent any expert opinion that could stand as substantial evidence that the plaintiff was less limited than found by the ALJ," ALJ did not assess a mental RFC more favorable than the evidence would otherwise support); *Norman T.*, 2018 WL 3105778, at *6 (ALJ did not assess a mental RFC more favorable to claimant than evidence would otherwise support when, although ALJ's finding regarding off-task limitations was more favorable than those of agency nonexamining consultants, ALJ rejected those consultants' conclusions regarding the impact of claimant's cognitive limitations); *Caudle*, 2016 WL 17340174, at *6 (ALJ's mental RFC finding

was not more favorable than record would otherwise support when ALJ found greater restrictions than an agency nonexamining consultant that did not "clearly correlate with either" an agency examining consultant's report or claimant's subjective allegations, and, "in the absence of further explication," it was "impossible to tell" if ALJ's mental RFC determination was supported by substantial evidence or whether any error was harmless).

*Lee*, *Pressey*, and *Soto,* cited by the commissioner, are distinguishable.  In *Lee*, "the ALJ pointedly noted that he had given 'the [plaintiff] the benefit of the doubt' in assessing a more plaintiff-friendly (restrictive) RFC than those assessed by several experts . . ., which he noted otherwise 'would be entitled to significant probative weight' because they were 'generally consistent with and supported by the just discussed record and the aforementioned medical evidence[,]'" *Lee*, 2018 WL 793595, at *5 (citation omitted).  In *Pressey*, in assessing a physical RFC more favorable to the plaintiff than any of the expert opinions of record, the ALJ emphasized the weight that she had given to the opinions of agency consultants and the fact that she found new evidence adduced at the hearing level not to be of any significant evidentiary weight.  *See Pressey*, 2017 WL 2731308, at *5.  Finally, *Soto* is distinguishable in that the ALJ in that case "did not indicate that agency nonexamining consultants' RFC opinions had been called into question by later-submitted evidence[,]" and the court did not "hold that those opinions could not serve as substantial evidence of the claimant's RFC." *Staples v. Berryhill*, No. 1:16-CV-00091-GZS, 2017 WL 1011426, at *4 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017).

Complicating matters further, as noted above, the ALJ failed even to consider Dr. Wiktor's report with its novel diagnosis of schizoid personality disorder and finding of "adaptive, interpersonal and functional difficulties" and "patterns of antisocial tendencies, prosecutor ideations and possible delusional thinking[.]" Wiktor Report at 10.

Nor does the ALJ's explanation that her mental RFC determination "partially accounted for" Dr. Baer's (i) conclusions that the plaintiff "had weak verbal and visual memory" and "difficulty with multi-step planning" and (ii) "recommendation that the [plaintiff] break down large tasks into smaller components" Record at 27, salvage the decision. She did not explain, nor is it self-evident, how limiting the plaintiff to simple work that does not entail a production rate pace adequately accounts for Dr. Baer's conclusions and recommendations or how she concluded that the plaintiff would be off task for five percent – *versus* some other percentage – of the workday.

As the plaintiff persuasively argues, "the ALJ failed in her responsibility to explain how her additional limitations actually account for [the plaintiff's] severe mental impairments." Statement of Errors at 16. While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) (citation and internal punctuation omitted), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway, *see*, *e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).

At bottom, the ALJ erred in construing evidence unseen by Dr. Ferrin to craft an RFC determination in circumstances in which she neither arrived at an RFC finding more favorable than the evidence would otherwise support nor provided the plaintiff with the benefit of the doubt. That, in turn, undermined her reliance on the testimony of a vocational expert at Steps 4 and 5 to find the plaintiff capable of performing past relevant work as an auto detailer or, in the alternative,

work existing in significant numbers in the national economy. *See* Finding 5, Record at 28; *id.* at 29-31; *see also, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of November, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge